OPINION
{¶ 1} This is an appeal from an order denying appellant Larry Greenleaf's ("appellant") motion to withdraw his guilty plea to one count of rape, a felony of the first degree.
 {¶ 2} On July 9, 2004 appellant was indicted on one count of rape, a felony of the first degree and one count of kidnapping, a felony of the first degree. On August 27, 2004, appellee sent a letter to appellant's counsel addressing discovery matters and a plea offer. The offer stated:
 {¶ 3} "The State of Ohio would offer, at this time, that your client enter a Written Plea of Guilty to Rape, a Felony of the First Degree. Upon your client's Written Plea of Guilty to that count, the State of Ohio would dismiss the Kidnapping, also a Felony of the First Degree. * * *."
 {¶ 4} The offer was negotiated more thoroughly pursuant to Crim.R. 11(F) and, as a result, a different agreement was reached. The agreement required appellant to take a polygraph examination and, if he failed, he would enter a written plea of guilty to the indictment. If appellant did not perform under the agreement, the results of the polygraph would be entered into evidence via stipulation. However, if appellant passed the polygraph, the state would dismiss the charges.
 {¶ 5} Subsequent to the foregoing negotiations, appellee interviewed the victim who objected to the offer and communicated her desire to see appellant stand trial.[1] In light of the victim's input, appellee moved to withdraw its offer. However, on September 24, 2004, appellant filed a motion to enforce the agreement. On October 6, 2004, after a hearing, the court granted appellant's motion to enforce. The following day, appellant took the polygraph examination and failed.
 {¶ 6} On October 18, 2004, a plea hearing was held prior to which appellee offered appellant a more favorable plea agreement. At the hearing, appellee stated on record:
 {¶ 7} "We have negotiated this case some more with the Public Defender's office and pursuant to further [Crim.R. 11(F)] negotiations, the State has agreed to allow the Defendant to enter a written plea of guilty to one count, one felony rather than two, and we prepared a Written Plea of Guilty to that effect, Your Honor."
 {¶ 8} The trial court engaged appellant in the requisite Crim.R. 11(C) plea colloquy during which appellant represented he was fully aware of the rights he was waiving and stated on record he understood the impact of his waiver. Appellant subsequently entered his written plea of guilty to one count of rape which the trial court accepted. On December 14, 2004, prior to sentencing, appellant filed a handwritten pro se motion to withdraw his guilty plea. The motion failed to set forth a basis for the withdrawal and on December 15, 2004, the trial court overruled the motion without a hearing. At the sentencing hearing, counsel moved the court orally to withdraw appellant's guilty plea. Counsel stated appellant did not specify a substantive basis for withdrawing the guilty plea save the permissive character of Crim.R. 32.1. The court addressed the motion on record and denied it from the bench.
 {¶ 9} On December 17, 2004, appellant was sentenced to a term of nine years imprisonment. Appellant, who had previously been adjudicated a habitual sex offender, was again so classified and after a hearing, was also adjudicated a sexual predator. On January 11, 2005, the Public Defender's Office withdrew from the case. Appellate counsel was appointed and a notice of delayed appeal was filed on March 2, 2005. On May 23, 2005, this court granted appellant's motion and the instant appeal followed.
 {¶ 10} Appellant raises three assignments of error for our review:
 {¶ 11} "[1.] The trial court erred to the prejudice of the defendant — appellant when it failed to properly conduct a hearing upon the defendant-appellant's presentence written motion to withdraw his plea of guilty.
 {¶ 12} "[2.] A defendant does not enter a knowing, intelligent, and voluntary plea when the court fails to inquire about defendant's mental status and/or diseases prior to accepting the guilty plea.
 {¶ 13} "[3.] The defendant-appellant's constitutional rights to due process were prejudiced by the ineffective assistance of trial counsel."
 {¶ 14} For ease of discussion, we shall first attend to appellant's second assignment of error. Under his second assigned error, appellant asserts he was not afforded due process because the trial court accepted his plea of guilty without ascertaining whether he suffered from any physical and/or mental infirmities that might hinder his ability to understand the consequences of his plea. In short, appellant alleges his plea of guilty was not entered knowingly, intelligently, and voluntarily.
 {¶ 15} Crim.R. 11(C)(2) provides:
 {¶ 16} "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 {¶ 17} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 {¶ 18} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 {¶ 19} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the right to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 20} Crim.R. 11 is designed to ensure:
 {¶ 21} "* * * that a defendant is informed, and thus [to] enable the judge to determine that the defendant understands that his plea waives his constitutional right to a trial. And, within that general purpose is contained the further provision which would inform the defendant of other rights and incidents of a trial." State v. Ballard (1981), 66 Ohio St.2d 473, 480.
 {¶ 22} A reviewing court must determine whether the record demonstrates that the defendant was informed of the relevant constitutional rights and incidents of trial and that a guilty plea represents a knowing and voluntary forfeiture of those rights stemming from a trial. Id. It follows that a verbatim recitation of Crim.R. 11(C) is unnecessary. Rather, our focus on review is whether the record demonstrates that the trial court explained or referred to the rights in a manner reasonably intelligible to the defendant in question. Id. at 480.
 {¶ 23} Crim.R. 11(C)(2) creates two categories of rights that the trial court must address prior to accepting a defendant's guilty plea: constitutional rights and non-constitutional rights. The former require the court to explain to the defendant he or she is waiving: (1) the Fifth Amendment privilege against self-incrimination; (2) the right to a jury trial; (3) the right to confront one's accusers; (4) the right to compulsory process to obtain witnesses; and (5) the right to have the state prove guilty beyond a reasonable doubt. State v. Porterfield, 11th Dist. No. 2002-T-0045, 2004-Ohio-520, at ¶ 23. These constitutional rights require strict compliance and the failure of a court to strictly comply invalidates the guilty plea. Statev. Lavender, 11th Dist. No. 2000-L-049, 2001-Ohio-8790, 11.
 {¶ 24} The remaining requirements of Crim.R. 11(C) involve so-called non-constitutional rights. Non-constitutional rights require substantial compliance. State v. Nero (1990),56 Ohio St.3d 106, 108. A court substantially complies where the record demonstrates the defendant, under the totality of the circumstances, subjectively understood the implications of the plea and the rights waived. Id. at 108. A court's failure to inform a defendant of his or her non-constitutional rights does not necessitate a reversal if the reviewing court determines the defendant was privy to the consequences of his or her guilty plea regarding these rights. Porterfield, supra, at ¶ 25. Moreover, failure to "substantially comply" with the non-constitutional requirements of Crim.R. 11(C) does not, of itself, constitute reversible error. Rather, a defendant must demonstrate he or she was prejudiced by the lack of compliance. State v. Johnson
(1988), 40 Ohio St.3d 130, 134; see, also, Crim.R. 52(A); Crim.R. 33. The test for prejudice is "whether the plea would have otherwise been made." Nero, supra.
 {¶ 25} At the plea hearing, appellant appeared with counsel and the following exchange occurred:
 {¶ 26} "Mr. Laczko: You have before you our Written Plea of Guilty to one count of rape. I have gone over with Mr. Greenleaf his statutory and Constitutional Rights with respect to trial in this matter.
 {¶ 27} "He is prepared to waive those at this time with the understanding of the recommendation of the Prosecutor.
 {¶ 28} "The Court: Sir, do you understand that charge?
 {¶ 29} "Defendant: Yes, sir.
 {¶ 30} "The Court: You understand if you plead guilty to that charge, you will be imprisoned three, four, five, six, seven, eight, nine or ten years?
 {¶ 31} "Defendant: Yes.
 {¶ 32} "The Court: You understand that we're going to have a presentence investigation on this case in order to determine what length of sentence you should get?
 {¶ 33} "Defendant: Yes, sir.
 {¶ 34} "The Court: You understand that upon your release from prison, you will be subject to post release control, and if you violate terms of that post release control, the Court could increase your prison sentence up to fifty percent of the original sentence, you understand that?
 {¶ 35} "Defendant: Yes, sir.
 {¶ 36} "The Court: You further understand that you're giving up your right to a trial by Jury?
 {¶ 37} "Defendant: Yes.
 {¶ 38} "The Court: That means you give up the right to confront, cross-examine and subpoena witnesses?
 {¶ 39} "Defendant: Yes.
 {¶ 40} "The Court: You also understand you relieve the State of the burden of proving your guilt beyond a reasonable doubt at a trial where you could not be compelled to testify?
 {¶ 41} "Defendant: Yes.
 {¶ 42} "The Court: You know you're giving up rights of appeal which you may have had had you gone to trial?
 {¶ 43} "Defendant: Yes.
 {¶ 44} "The Court: Anything you don't understand?
 {¶ 45} "Defendant: No.
 {¶ 46} "The Court: Are you guilty?
 {¶ 47} "Defendant: Pardon me?
 {¶ 48} "The court: Are you guilty?
 {¶ 49} "Defendant: I'm pleading guilty to the plea agreement, Your Honor.
 {¶ 50} "The Court: Are you guilty?
 {¶ 51} "Defendant: Yes.
 {¶ 52} "The Court: The Court accepts your plea.
 {¶ 53} "You are referred for sentencing investigation. You'll be held without bond."
 {¶ 54} The foregoing reveals the trial court strictly complied with the constitutional requirements set forth in Crim.R. 11(C) by informing appellant he was, by pleading guilty, waiving his rights (1) to a jury trial, (2) to confront witnesses, (3) compulsory process to obtain witnesses, and (4) to have the state prove his guilt beyond a reasonable doubt at a trial where he could not be compelled to testify. Crim.R. 11(C)(2)(b).
 {¶ 55} That said, appellant asserts the court erred because it did not specifically inquire into his physical and mental status prior to accepting the guilty plea. In particular, appellant claims he suffers from diabetes and his medication, if not properly regulated could hinder his cognitive faculties. Similarly, appellant argues the court was required to ask him whether he had any "mental diagnoses" or whether he was on any attendant medications for the same. In sum, appellant maintains the court erred when it accepted his plea without a proper determination as to whether he suffered from any physical or mental infirmities that might compromise his ability to knowingly, voluntarily, and intelligently plead guilty to the charge in question.
 {¶ 56} We first note the specific inquiries upon which appellant bases the instant argument are non-constitutional requirements of the Crim.R. 11(C) exercise. That is, a court is not required to specifically query a defendant's physical or mental status before accepting the plea. The goal of the Crim.R. 11(C) colloquy is to make certain a defendant is knowingly, voluntarily, and intelligently pleading to the charge or charges under consideration. We believe the court's dialogue with appellant accomplished this goal. The questions posed by the court during the plea hearing in conjunction with appellant's responses, were sufficient to demonstrate appellant knowingly, voluntarily, and intelligently waived his rights.
 {¶ 57} The record of the plea hearing reflects appellant was in no way mentally or physically compromised, i.e., he was alert, responsive, and did not exhibit any physical or mental deficits. Moreover, appellant averred, with counsel present, that he understood the nature and dimension of his waivers. When asked if there was anything he did not understand, appellant responded in the negative and immediately admitted his guilt. Further, prior to his plea hearing, appellant filed a motion to enforce a plea offer which was more strict, i.e., the former offer required appellant to plead to the indictment if he failed the polygraph. The motion reveals indicates appellant deliberately desired to enter a plea, a plea to an offer which was significantly less lenient, in lieu of a trial on the indictment. When considered in its totality, we believe the record demonstrates that the defendant was informed of his constitutional rights and relevant incidents of trial and that his guilty plea represented a knowing and voluntary forfeiture of those rights.[2] Ballard,
supra, at 480.
 {¶ 58} Appellant's second assignment of error is without merit.
 {¶ 59} Appellant's first assignment of error argues his rights to due process were violated when the trial court failed to conduct a hearing on his pro se motion to withdraw his guilty plea.
 {¶ 60} Crim.R. 32.1 provides:
 {¶ 61} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct a manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."
 {¶ 62} Pursuant to Crim.R. 32.1, a pre-sentence motion to withdraw a plea of guilty should be freely and liberally granted.State v. Pachay (Dec. 15, 1995), 11th Dist. No. 95-L-096, 1995 Ohio App. LEXIS 5562, 3. However, a defendant does not have an absolute right to withdraw the plea prior to sentencing. Statev. Mitchell (June 30, 1995), 11th Dist. No. 94-P-0070, 1995 Ohio App. LEXIS 2803, 3. Rather, review of a denial of a motion to withdraw a plea of guilty is limited to finding whether the trial court abused its discretion. Id. A change of mind regarding a guilty plea and the possible sentence is, without more, insufficient to support the withdrawal of a guilty plea. Statev. Lambros (1988), 44 Ohio App.3d 102, 103.
 {¶ 63} This court has previously held that the denial of a motion to withdraw a guilty plea will not be reversed on appeal when the record demonstrates:
 {¶ 64} "(1) the defendant was represented by highly competent counsel; (2) prior to accepting the plea, the trial court conducted a full hearing on the matter, pursuant to Crim.R. 11; (3) the trial court conducted a full and impartial hearing on the motion to withdraw; and (4) the trial court gave full and fair consideration to the motion before denying it." Mitchell,
supra, at 3; see, also, State v. Peterseim (1980),68 Ohio App.2d 211.
 {¶ 65} On December 14, 2004, appellant moved the court, pro se via handwritten motion, to withdraw his guilty plea. The motion failed to state any basis for withdrawing the plea. Specifically, the motion stated:
 {¶ 66} "Now comes the defendant, Larry Greenleaf, pro se to make motion to withdraw plea made in case number 2004 CR 00262, pursuant to Criminal Rule 32.1, to wit: a plea of guilty or no contest may be made before sentence is imposed." (sic.)
 {¶ 67} The trial court overruled this motion without holding a hearing.
 {¶ 68} It is well settled that "a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." State v. Xie (1992),62 Ohio St.3d 521, 527. Ordinarily, the trial court's failure to hold a hearing to determine whether a reasonable and legitimate basis exists to grant the motion is reversible error. However, under the current circumstances, appellant was represented by counsel and, as such, any motion to the court should have been directed by counsel.
 {¶ 69} "In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." State v. Martin, 103 Ohio St.3d 385, at paragraph one of the syllabus, 2004-Ohio-5471.
 {¶ 70} Here, appellant did not move the court to proceed pro se but had appointed counsel to guide his defense. Once appellant accepts counsel's assistance and does not move the court to proceed pro se, he may not "act as co-counsel on his own behalf."State v. Thompson (1987), 33 Ohio St.3d 1, 6-7. The Supreme Court rejected such "hybrid representation" because of the foreseeable problems it creates, viz., conflicts in the strategic management of a trial, ethical dilemmas for counsel, and management issues for the trial judge when defendant and his counsel disagree on how the trial should proceed. Martin,
supra, at ¶¶ 33-34.
 {¶ 71} In our view, appellant's written pro se motion was an attempt to operate as co-counsel on his own case and thus utilize the "hybrid representation" rejected by the Supreme Court. Once counsel was appointed, appellant was not entitled to engineer his own trial strategy, make appearances on his own behalf, or file motions. We accordingly hold appellant's unsubstantiated pro se motion to withdraw his guilty plea was not properly before the court. Therefore, the trial court was not required to hold a hearing on the matter.
 {¶ 72} Appellant's first assignment of error does not specifically challenge the legitimacy of the trial court's denial of counsel's oral Crim.R. 32.1 motion. Accordingly, appellant has waived any error pertaining to the oral motion. However, assuming the issue is properly before us, we believe the trial court did not err in denying the motion. Immediately prior to sentencing, the following exchange took place:
 {¶ 73} "[Defense Counsel:] First of all, I was not aware of the fact that Mr. Greenleaf had filed a pro se Motion to Withdraw his Plea.
 {¶ 74} "I did get a copy of the Court's entry. I relayed the Court's decision regarding his Motion to the Defendant. He asked that I again make the Motion to Withdraw his plea before we do this hearing.
 {¶ 75} "He has not at this point in time articulated any reason to me, specifically as to why he should be permitted to withdraw his plea, other than the statute in the criminal rules allow him to do that prior to sentencing.
 {¶ 76} "So, first initially, Judge, I'll make that Motion to the Court.
 {¶ 77} "THE COURT: Well, his pro se Motion, which he made with the Court, I don't think he even signed it, but he made a Motion to vacate his plea and it set forth no grounds on which to vacate that plea and you have just announced no grounds to vacate the plea, and the Court has reviewed the record and sees no grounds on the surface of it to vacate the plea, so that Motion is again overruled."
 {¶ 78} Here, the court heard appellant's motion immediately before sentence was imposed. Inviting and hearing oral arguments on a motion to withdraw a guilty plea at the sentencing hearing can constitute a full and fair hearing on that motion. State v.Burnett, 2d Dist. No. 20496, 2005-Ohio-1036, at ¶ 20. Appellant failed to offer a legitimate reason justifying his motion to withdraw. Under the circumstances, we believe appellant was represented by highly competent counsel; he was afforded a full hearing pursuant to Crim.R. 11; he was given an opportunity to be heard and inform the trial court of the basis for the Crim.R. 32.1 motion; and, finally, the record shows the trial court gave the necessary consideration to appellant's motion. Each of thePeterseim factors were met. Therefore, we hold the trial court did not abuse its discretion in overruling appellant's Crim.R. 32.1 motion.
 {¶ 79} Appellant's first assignment of error lacks merit.
 {¶ 80} Under his final assignment of error, appellant argues he suffered ineffective assistance of counsel when defense counsel failed to ascertain whether appellant was able to enter a valid plea of guilty in light of his past mental and physical history.
 {¶ 81} To sustain a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different when considered in relation to the totality of the evidence before the court. Strickland v. Washington (1984), 466 U.S. 668.
 {¶ 82} With respect to the initial prong, counsel is entitled to a strong presumption that his or her conduct falls within the vast range of reasonable professional assistance. Appellant must therefore overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689. Strategic and tactical decisions fall squarely within the scope of professionally reasonable judgment. Id. at 699.
 {¶ 83} Strickland's second prong requires appellant to demonstrate he was prejudiced by "a probability sufficient to undermine confidence in the outcome." Id. at 694. The inquiry is whether counsel's errors were so egregious as to deprive appellant of a proceeding whose results are reliable, i.e., "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686.
 {¶ 84} Under the circumstances, appellant asserts trial counsel was ineffective because he failed to articulate "that there could be issues with [appellant's] mental and physical conditions at the time of the Plea Hearing that may have
affected [his] ability to enter a voluntary plea as mandated by Crim.R. 11." (Emphasis added).
 {¶ 85} We first point out appellant's argument hinges upon hypothetical possibilities, not upon objective facts. That is, appellant merely speculates that the possible ingestion of some unknown medication and/or the potential effects of diabetes may have rendered his plea invalid. "Medical conditions or physical disorders, including diabetes, do not necessarily render a criminal defendant incapable of knowingly, intelligently, and voluntarily pleading guilty." State v. Harmon, 4th Dist. No. 04CA22, 2005-Ohio-1974, at ¶ 26; see, also, State v. Crump
(Feb. 11, 1982), 8th Dist. Nos. 43621 and 43622, 1982 Ohio App. LEXIS 11336, 5.
 {¶ 86} Here, appellant nowhere avers he had taken mind-altering medication or experienced a diabetic episode which would compromise his ability to enter a valid plea. Furthermore, appellant offers no evidence that the medication in question or his status as a diabetic would be enough to render his plea invalid. In addition, there was no indication that appellant was either physically or mentally impaired during the plea hearing. Without any objective indicators that appellant's ability to reason or act under his own volition was compromised, counsel could reasonably infer he was in full possession of his mental and physical faculties. With this in mind, we do not believe counsel acted unreasonably in failing to question appellant's mental or physical capacities. Appellant fails to meet the first prong of Strickland.
 {¶ 87} However, assuming appellant could demonstrate counsel's performance fell below an objective standard of reasonableness, appellant cannot demonstrate prejudice. As discussed under appellant's second assigned error, the trial court's Crim.R. 11 colloquy was sufficient to ensure appellant's plea was made knowingly, voluntarily, and intelligently. The court sedulously followed the constitutional requirements of Crim.R. 11, including expressly asking appellant if he understood the nature of his plea and the rights he was waiving. Appellant stated on record he understood his actions and admitted his guilt. Finally, without some indicia that appellant's mental or physical condition was actually compromised at the plea hearing, we do not believe counsel's failure to query appellant's mental and/or physical condition affected the reliability of the proceedings.
 {¶ 88} Appellant's final assignment of error is without merit.
 {¶ 89} For the foregoing reasons, appellant's three assignments of error are overruled and the judgment of the Portage County Court of Common Pleas is hereby affirmed.
Ford, P.J., concurs.
O'Neill, J., dissents with Dissenting Opinion.
[1] During a pretrial hearing, the prosecution indicated the primary reason it made the original offer was due to the inability to locate and interview the victim. However, after the offer was made, the victim met with the prosecution and expressed her dissatisfaction with the proposed plea bargain.
[2] It also bears noting that even were we to determine the court did not "substantially comply" with the spirit of Crim.R. 11(C), appellant failed to show prejudice. Here, appellant presents no evidence that he was suffering from the malaise of medication or otherwise unable to exercise a knowing, voluntary, and intelligent waiver of the rights in question. Accordingly, appellant fails to demonstrate that had the court queried his mental and physical status, the outcome would have changed.