OPINION
{¶ 1} Defendant-appellant, Alan L. Anderson ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, convicting him of one count of felonious assault entered upon his plea of guilty to the same. Appellant was sentenced to eight years imprisonment.
 {¶ 2} On April 4, 2005, Mr. Dean Malone, the victim, was delivering Meals on Wheels, and delivered a meal to appellant's apartment. Appellant, alleging that his food had been tampered with, complained to the apartment manager. Subsequently, appellant confronted Mr. Malone. As a result of the confrontation, appellant was asked to turn in his keys and leave the apartment complex. Appellant then found Mr. Malone and began assaulting him. According to witnesses, appellant drug Mr. Malone through a parking lot by his foot, kicked him, spit on him, and attempted to throw him into a dumpster. When two witnesses began to approach, appellant left the area and left Mr. Malone in the parking lot. Mr. Malone was taken to the hospital where he remained in a coma for five days. Mr. Malone still suffers from memory loss and motor and cognitive impairment.
 {¶ 3} Appellant was indicted on June 29, 2005, for felonious assault in violation of R.C. 2903.11, a felony of the second degree. On October 6, 2005, a jury trial began, and voir dire was completed. However, prior to the jury being sworn, appellant decided to waive his rights and enter a plea of guilty to felonious assault as indicted. The trial court accepted appellant's guilty plea, and ordered a pre-sentence investigation. After a continuance, sentencing was scheduled for January 19, 2006. Appellant filed a sentencing memorandum on December 20, 2005. On January 3, 2006, appellant, through counsel, filed a motion to withdraw his guilty plea. On January 4, 2006, appellant, pro se, filed a motion for new counsel and to withdraw his guilty plea. The trial court held a hearing on January 23, 2006, whereat the court addressed the motion to withdraw the guilty plea on the record, and denied it from the bench. The trial court did, however, appoint new counsel to represent appellant for sentencing. On February 16, 2006, appellant was sentenced to eight years incarceration, and on March 1, 2006, a supplemental hearing was held to inform appellant of his right to appeal his sentence.
 {¶ 4} Appellant timely appealed to this court, and brings the following three assignments of error for our review:
Assignment of Error No. 1:
THE COURT ERRED IN OVERRULING APPELLANT'S MOTION TO WITHDRAW HIS PLEA OF GUILT PURSUANT TO CRIM. R. 32.1.
Assignment of Error No. 2:
APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN ENTERING HIS GUILTY PLEA.
Assignment of Error No. 3:
APPELLANT'S GUILTY PLEA WAS INVOLUNTARILY AND UNINTELLIGENTLY ENTERED.
 {¶ 5} In his first assignment of error, appellant argues that the trial court erred in denying his motion to withdraw his guilty plea. Crim.R. 32.1, provides:
A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
 {¶ 6} Appellant filed a motion to withdraw his guilty plea after entering the plea and prior to sentencing. We recognize that a pre-sentence motion to withdraw a guilty plea should be freely and liberally granted. State v. Xie (1992),62 Ohio St.3d 521, 527. However, "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing." Id., at syllabus paragraph one. Rather, "[a] trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. Cf. State v. Ingram
(Mar. 5, 2002), Franklin App. No. 01AP-854, 2002-Ohio-883, motion for delayed appeal denied, 96 Ohio St.3d 1454, 2002-Ohio-3819
(observing that a trial court's failure to strictly comply with Crim.R. 11 regarding critical constitutional rights is prejudicial error).
 {¶ 7} Crim.R. 32.1 provides no guidelines for a trial court to use when ruling on a pre-sentence motion to withdraw a guilty plea, and it is well-settled that the decision to grant or deny a pre-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Xie, at syllabus, paragraph two. Therefore, absent an abuse of discretion, a trial court's decision to grant or deny a pre-sentence motion to withdraw a guilty plea must be affirmed. Id. at 527. For an abuse of discretion to lie, a reviewing court must find that a trial court's ruling was "`unreasonable, arbitrary or unconscionable.'" State v. Vasquez, Franklin App. No. 05AP-705, 2006-Ohio-4074 at ¶ 6, quoting Xie at 527, quotingState v. Adams (1980), 62 Ohio St.2d 151, 157. See, also,State v. Tyler, Franklin App. No. 01AP-1055, 2002-Ohio-4300, appeal not allowed, 97 Ohio St.3d 1485, 2002-Ohio-6866 (observing that an abuse of discretion is not merely poor judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency).
 {¶ 8} In State v. Boyd (Oct. 22, 1998), Franklin App. No. 97AP-1640, appeal not allowed, (1999), 85 Ohio St.3d 1424, this court outlined a non-exhaustive list of factors that a trial court may consider when determining whether to grant or deny a motion to withdraw a guilty plea prior to sentencing. According to Boyd, a trial court may consider:
* * * 1) whether the accused was represented by highly competent counsel; 2) whether the accused was given a full Crim.R. 11 hearing before entering the plea; 3) whether a full hearing was held on the motion; 4) whether full and fair consideration was given the motion by the trial court; 5) whether the motion was made within a reasonable time; 6) whether the motion set forth specific reasons for withdrawal; 7) whether the accused understood the nature of the charges and possible penalties; and 8) whether the accused might have a complete defense to the charge or charges.
 {¶ 9} Finding that Ohio and federal law were comparable on this issue, this court, in Boyd, remarked:
In United States v. Spencer (C.A.6, 1987), 836 F.2d 236, the court suggested several factors to be considered in determining whether to grant a pre-sentence motion to withdraw a guilty plea, including: 1) the length of time between the entry of the guilty plea and the filing of the motion to withdraw; 2) why the grounds for withdrawal were not presented to the court at an earlier point in the proceedings; 3) whether the defendant has asserted and maintained his innocence, the circumstances underlying the entry of the guilty plea; 4) the nature and background of the defendant; 5) whether the defendant has admitted guilt; and 6) whether the prosecution will be prejudiced as a result of plea withdrawal.
 {¶ 10} Based on the record before us, we are unable to conclude that the trial court abused its discretion in denying appellant's motion to withdraw his guilty plea. At the time appellant entered his guilty plea, the trial court engaged in the requisite Crim.R. 11 plea colloquy, during which appellant represented he was fully aware of the rights he was waiving, and stated on the record he understood the impact of his waiver. Appellant subsequently entered his written plea of guilty to one count of felonious assault, which the trial court accepted.
 {¶ 11} In his motion to withdraw his guilty plea, appellant asserted that at the time he entered his guilty plea, he had difficulty in understanding the nature of his plea due to chronic health problems associated with diabetes. Appellant further asserted that since the time he entered the plea, his medical condition had been more effectively managed, which permitted him to have a more clear-headed analysis of his legal position and the effects of his waiver of constitutional rights. Appellant also expressed his dissatisfaction with his trial counsel. It is worthy to note that at no time, either in the motion to withdraw his guilty plea, or at the hearing on said motion, did appellant maintain his innocence. Instead, appellant suggested that he inflicted only one punch to the victim, and that the injuries sustained could not have been caused by that one punch.
 {¶ 12} In denying appellant's motion, the trial court carefully weighed the issues raised by appellant. The trial court observed that (1) appellant changed his course of action after the jury was selected by entering a guilty plea, and then again just before sentencing, by seeking to withdraw the plea; (2) appellant had been represented by competent counsel throughout the entire process, and was given sound professional advice; (3) appellant had been incarcerated and medical treatment had been administered to appellant for at least four months prior to him entering his plea of guilty, thus rendering appellant's credibility suspect; (4) there was a three-month delay in filing the motion to withdraw his guilty plea; and (5) appellant understood what he was doing at the time when he chose to discontinue the jury trial and enter a plea of guilty.
 {¶ 13} The record clearly supports the trial court's findings contained within the decision to deny appellant's motion to withdraw his guilty plea. We first note that a court is not required to specifically query a defendant's physical or mental status before accepting a plea. The goal of the Crim.R. 11(C) colloquy is to make certain a defendant is knowingly, voluntarily, and intelligently pleading to the charge or charges under consideration. We believe the court's dialogue with appellant accomplished this goal. The questions posed by the court during the plea hearing in conjunction with appellant's responses, were sufficient to demonstrate appellant knowingly, voluntarily, and intelligently waived his rights.
 {¶ 14} At the beginning of the hearing, the trial court asked appellant if he was under the influence of any substance or medication that would make it difficult for him to understand the proceedings, and appellant answered in the negative. Thereafter, pursuant to Crim.R. 11, the trial court asked appellant, among other things, if he understood that a plea of guilty would foreclose a trial and the rights lost when a trial does not occur, including the right to subpoena witnesses on his behalf, the right to cross-examine witnesses, and the right not to testify. At no point did it appear as if appellant did not fully understand the purpose and result of the proceedings. In fact, when asked if he understood his rights lost when a trial does not occur, appellant answered, "Yes," each time. (Dec. 6, 2005 Tr. at 4-9.)[1] Additionally, appellant told the trial court that he was voluntarily pleading guilty, and that he understood the maximum authorized prison terms for the offense. Further, appellant signed a guilty plea form wherein he indicated that he understood the maximum authorized prison terms for the offense subject to his guilty plea, and affirmed that he was voluntarily pleading guilty. The following exchange also occurred at the plea hearing:
[The Court]: Therefore, Mr. Anderson, I'm going to ask you how it is that you plead, as you stand indicted as to the felonious assault, a felony of the second degree?
[Appellant]: Guilty of assault. [The Court]: Well, it's felonious assault, a felony of the second degree; do you understand? It's not just a simple assault, it's a felonious assault, a second-degree felony.
How do you plead to that offense?
[Appellant]: I ain't clear of the nature of — in regards to the felonious assault, to my understanding that's what they're saying I'm guilty of.
[The Court]: Okay. What felonious assault means is — a simple assault, and misdemeanor assault is causing physical harm to another person, either knowingly cause physical harm to another. Instead of the physical harm, you caused what the law calls serious physical harm.
It is not misdemeanor assault. But it is a second degree felonious assault. That's the difference in the nature of the crimes — the degree of harm that you are accused of imposing on another person.
[Appellant]: Yes, sir, I'm going to go with that.
[The Court]: Okay. I don't mean to be difficult by this, Mr. Anderson, but the law requires that you either say "guilty" or "not guilty." * * *.
[Appellant]: Guilty.
[The Court]: * * * So how are you pleading to a second degree felony, the felonious assault?
[Appellant]: Guilty.
(Dec. 6, 2006, Tr. at 9-10.)
 {¶ 15} As the record demonstrates, any confusion regarding the nature of the charge was discussed by the trial court. There is no indication that appellant did not understand or was not aware of his actions.
 {¶ 16} Secondly, "[m]edical conditions or physical disorders, including diabetes, do not necessarily render a criminal defendant incapable of knowingly, intelligently, and voluntarily pleading guilty." State v. Greenleaf, Portage App. No. 2005-P-0017, 2006-Ohio-4317, at ¶ 85, quoting State v. Harmon,
Pickaway App. No. 04CA22, 2005-Ohio-1974, at ¶ 26, appeal not allowed, 106 Ohio St.3d 1508, 2005-Ohio-4605. Here, appellant does not allege he had a diabetic episode, which would compromise his ability to enter a valid plea. Furthermore, like the defendant in Greenleaf, appellant offers no evidence that the medication in question or his status as a diabetic would be enough to render his plea invalid. Additionally, there is no indication that appellant was either physically or mentally impaired during the plea hearing. In fact, as set forth above, the record demonstrates to the contrary.
 {¶ 17} At most, appellant had a change of heart after pleading guilty; however, a "defendant's change of heart or mistaken belief about the guilty plea or expected sentence does not constitute a legitimate basis that requires the trial court to permit the defendant to withdraw the guilty plea." State v.Brooks, Franklin App. No. 02AP-44, 2002-Ohio-5794, at ¶ 51, citing State v. Sabatino (1995), 102 Ohio App.3d 483, 486. See, also, State v. Drake (1991), 73 Ohio App.3d 640, 645, citingState v. Meade (May 22, 1986), Cuyahoga App. No. 50678. Given the evidence contradicting appellant's position, and given our consideration of the requisite factors, we conclude that the trial court's decision to deny appellant's motion to withdraw his guilty plea was not unreasonable, arbitrary, or unconscionable, and, therefore, does not rise to the level of an abuse of discretion. Accordingly, we overrule appellant's first assignment of error.
 {¶ 18} In his second assignment of error, appellant contends that he was denied effective assistance of counsel when he entered his guilty plea. Appellant asserts that he and his counsel did not effectively communicate and that effective communication is the cornerstone of effective assistance of counsel.
 {¶ 19} The United States Supreme Court set forth a two-pronged analysis to be applied when reviewing an ineffective assistance of counsel claim. Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. According to Strickland:
A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Id. at 687.
 {¶ 20} "In the context of a guilty plea, however, `a defendant must also demonstrate that there is a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"State v. Glass, Franklin App. No. 04AP-967, 2006-Ohio-229, at ¶33, quoting State v. Curd, Lake App. No. 2003-L-030,2004-Ohio-7222, at ¶ 110, reversed on other grounds,109 Ohio St.3d 313, 2006-Ohio-2109.
 {¶ 21} Appellant does not direct us to any particular portion in the record, but rather contends that "as a result of the inability to communicate counsel's performance was ineffective." (Appellant's Brief at 5.) Here, defense counsel began a jury trial on appellant's behalf, and after a jury was selected, appellant decided to enter a guilty plea. During the plea hearing, the trial court inquired:
[The Court]: I hesitate to ask this next question. But, are you satisfied with the representation that [your counsel] has provided to you with respect to explaining to you your rights?
[Appellant]: This morning, yes, sir.
[The Court]: So this morning, and what he has explained to you, you have the right to continue with the trial or change your not-guilty plea; are you satisfied with his representations?
[Appellant]: Yes, sir, completely.
(Dec. 6, 2005, Tr. at 8.)
 {¶ 22} At the hearing on the motion to withdraw the guilty plea, appellant again expressed his dissatisfaction with his trial counsel, and the trial court noted:
[The Court]: Okay. Here's what we're going to do. I believe that you were represented by very competent counsel throughout this proceeding, at each hearing, heading up towards the jury trial, during the course of the voir dire and the impaneling of the jury. And I believe that you were given sound quality, professional legal advice. You made the decision to switch your — to change your plea.
(Jan. 23, 2006, Tr. at 13-14.)
 {¶ 23} Although, appellant complained that he could not effectively communicate with his counsel, there is nothing in the record to suggest that counsel's performance was deficient, or that counsel committed any errors, let alone any errors so serious that counsel was not functioning as "counsel." Further, there is no evidence that, but for his counsel's alleged errors, appellant would have insisted on going to trial rather than pleading guilty. Despite the alleged personality conflict, the record establishes that appellant's trial counsel properly prepared, and provided professional, quality advice. Accordingly, we overrule appellant's second assignment of error.
 {¶ 24} In his third assignment of error, appellant contends that his guilty plea was not intelligently and voluntarily entered. Appellant does not contest the trial court's recitation of the Crim.R. 11 rights, nor does he dispute that he was afforded a full hearing before the trial court accepted his guilty plea. Rather, appellant contends that his high blood sugar levels impaired his ability to enter into the plea in a knowing and voluntary manner. The record, however, reflects otherwise.
 {¶ 25} Contrary to appellant's assertion that his blood sugar level reached a high of 373 on the day he entered his plea, the records indicate that on the morning of October 6, 2005, his blood sugar level was 268, and he was treated with 20 units of Humulin 70/30 insulin and 4 units of Humalog insulin. In the evening of October 6, 2005, appellant's blood sugar was 351 and he was treated with 15 units of Humulin 70/30 insulin and 8 units of Humulog insulin. Simply having a medical condition does not necessarily render a criminal defendant incapable of knowingly, voluntarily, and intelligently pleading guilty. Greenleaf,
supra. There is no evidence that appellant's medical condition hindered his ability to enter into a valid plea, and there is nothing to suggest that appellant was incoherent, or unaware of the proceedings.
 {¶ 26} As discussed with respect to appellant's first assignment of error, the trial court asked at the beginning of the hearing whether appellant was on any medications that would make it difficult to understand the proceedings and appellant answered in the negative. Additionally, the record reflects the following:
[The Court]: Thank you, Mr. Anderson.
[Counsel], are you satisfied that Mr. Anderson understands what it is that he's doing this morning, and that he's entering this plea freely, voluntarily, knowingly and intelligently, and that it is in his best interests to do so?
[Counsel]: Yes.
(Dec. 6, 2005 Tr. at 9.)
 {¶ 27} As the court in Greenleaf reasoned, without any objective indicators that appellant's ability to reason or to act under his own volition was compromised, it is reasonable to infer that appellant was in full possession of his mental and physical capacities. Id. at ¶ 86. Additionally, at the hearing on the motion to withdraw the guilty plea, the trial court noted:
[The Court]: * * *
He was given a full hearing and had an opportunity to raise any questions or concerns that he had, also, once again, highlighted for the record, this change from a jury trial to a plea because Mr. Anderson stood up and said that's what he wanted to do.
So he, at least, understood the proceedings that were going on, and also that he had the ability to bring them to a halt by pleading guilty.
(Jan. 23, 2006, Tr. at 16.)
 {¶ 28} Despite appellant's contentions, we find that the record refutes his allegation that his guilty plea was not entered in a voluntary and intelligently manner. Consequently, we overrule appellant's third assignment of error.
 {¶ 29} For the foregoing reasons, we overrule appellant's three assignments of error, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] Although the transcript is dated December 6, 2005, it is undisputed that the plea took place on October 6, 2005.